IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RAY LAMONT MOORE, #346247   *
    Petitioner,
   v.       * CIVIL ACTION NO. RDB-14-579

WARDEN KATHLEEN GREEN, *et al.*, *
    Respondents.
          *****

## MEMORANDUM OPINION

Petitioner Ray Lamont Moore ( "Moore") seeks habeas corpus relief pursuant to 28 U.S.C. § 2254, attacking the constitutionality of his 2007 convictions in the Circuit Court for Baltimore County. ECF No. 1. Respondents were directed to respond to the Petition and have done so. ECF Nos. 2 & 6. Moore, who was afforded the opportunity to file a Reply, has not done so. *See* ECF No. 2. This matter has been fully briefed. Upon review, the Court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2014); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (Petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For reasons that follow, Moore's Petition for writ of habeas corpus IS DENIED AND DISMISSED WITH PREJUDICE.

### Background and Procedural History

Moore's two-day trial was held before a jury in the Baltimore County Circuit Court in April of 2007. As set forth by the Court of Special Appeals of Maryland, the following facts were established at trial:

> The Circuit Court for Baltimore County issued a search and seizure warrant on January 24, 2006, for the search of "[t]he person known as 'Ray Ray,' a black male described as being in his 20's with a medium build" and "[a] silver 4-door Kia with Maryland registration MPC835" for drugs, weapons, and drug

paraphernalia. Probable cause to issue the warrant was based upon the affidavit of Detective C. M. Toland and Detective Steven Sodd of the Baltimore County Police Department.

In that affidavit, the detectives stated that a confidential informant had informed them that appellant "sells crack cocaine in Baltimore County." According to the informant, "Ray Ray [could] be called on his cell phone,... and [he] will come out to sell crack cocaine, driving a silver 4-door Kia with Maryland registration MPC 835." The informant also advised that "he/she has observed Ray Ray talking about having guns and actually observed what he/she believed was a handgun in Ray Ray's silver Kia on one occasion."

The detectives affirmed that "[the informant] has provided information in the past which has lead [sic] to the successful recovery of narcotics in quantities that indicate an intention to distribute same and have led to several arrests; therefore, [the detectives] deem [the informant's] information reliable." They also stated that, in January, they had set up and executed a "controlled purchase of crack cocaine from Ray Ray." The informant arranged a meeting with appellant, while under surveillance by the detectives, to purchase cocaine with money given to the informant by the detectives.   Appellant drove the described vehicle to the arranged meeting location where he sold cocaine to the informant.

On January 25, 2006, at 7:00 p.m., while driving a silver Kia in Baltimore County, appellant was stopped by the Baltimore County police for the purpose of executing the search warrant. After "a search of [appellant] at the scene there per his outer-garments, his clothing," and a search of the vehicle produced no drugs or paraphernalia, Detective Toland took appellant to the local police precinct. In a private room and in the presence of the detective and another male police officer, appellant was directed to take off his clothes, bend over, and spread the cheeks of his buttocks. When he did, the detective "observed some plastic bag piece sticking out of his butt." Detective Toland "at that point...removed the plastic bag which contained two plastic baggies." One of those bags contained eleven baggies of cocaine and the other contained ten baggies of heroin.

Appellant moved to require the State to produce the identity of the informant and to suppress the evidence recovered. Both motions were denied.  Details of the motions hearing are set out in the Discussion section of this Opinion.

Trial took place on April 16 and 17, 2006. At trial, Detective Toland testified that, according to the officers who had stopped appellant, when appellant was stopped, he was observed "bending over in the vehicle with his hands tucked around his body." He refused to exit the vehicle, and a window had to be broken to remove him. Detective Toland was told that a cell phone was recovered in a search of appellant's vehicle, and that appellant had less than $200 on him.

Detective Toland was qualified and accepted by the court as an expert in the detection, sale, and packaging of narcotics. He testified that, in his opinion, each of the eleven baggies of crack cocaine had an approximate street value of $40 and each of the ten baggies of heroin had an approximate street value of $20. He opined that the amount of narcotics recovered, the two different types, and the way that the narcotics were packaged indicated an intent to distribute the drugs.

Detective Toland acknowledged that appellant said that he had a "bad" drug problem and that the drugs were for his personal use. Detective Toland, however, observed no visible indications of drug use on appellant's body.

The State's chemist testified that the drugs recovered from appellant tested positive for cocaine and heroin. The total weight of the cocaine was 4.4 grams and the total weight of the heroin was 1.4 grams.

Appellant did not testify or otherwise offer evidence.

ECF No. 6, Ex. 8 at pgs. 1-4.

Based on the evidence presented at trial, a jury sitting in the Circuit Court for Baltimore County found Moore guilty of possession of both heroin and cocaine with the intent to distribute. *Id.*, Ex. 5, Tr. at pgs. 149-152. On September 26, 2007, Moore was sentenced by Circuit Court Judge Patrick Cavanaugh as "subsequent offender" to a total twenty-five year term. *Id.*, Ex. 1 at pgs. 2-3; Ex. 4, Tr. at pgs. 14-15.

Moore filed a direct appeal to the Court of Special Appeals of Maryland through counsel, raising the following grounds: (1) the trial court erred in denying Moore's motion to suppress evidence discovered during a strip search; (2) the trial court erred in denying Moore's request to compel the State to reveal the identity of the confidential informant; and (3) the evidence was insufficient to sustain Moore's conviction for possession with intent to distribute CDS. ECF No. 6, Exs. 5-7.

On October 28, 2010, the Court of Special Appeals of Maryland issued a reported opinion which affirmed Moore's drug convictions. *Id.*, Ex. 8; *see also Moore v. State*, 195 Md.

3

App. 695, 7 A.3d 617 (Md. App. 2010). On February 22, 2011, the Court of Appeals of Maryland denied Moore's petition for writ of certiorari. *Id.*, Exs. 9 &10.

On December 13, 2011, Moore filed a post-conviction petition in the Circuit Court for Baltimore County. *Id.*, Ex. 11. As supplemented, argued, and litigated, Moore raised the following grounds: (A) trial counsel was ineffective due to his failure to (1) conduct an adequate pre-trial investigation of the facts and evidence in the case; (2) adequately cross-examine Detective Toland about the arrest and detention of Moore prior to his transport to the Baltimore County Police Department precinct and subsequent trip and cavity search; (3) object to Detective Toland's hearsay testimony regarding Moore's actions during the Swat Team's stop of Moore; (4) present an effective argument for revealing the identity of the confidential informant; (5) object or move for a mistrial based on the prosecutor's failure to disclose an arrest report in violation of *Brady*;[1] (6) call rebuttal witnesses at the suppression hearing; and (7) seek appropriate relief with respect to a sleeping jury foreman; (B) appellate counsel was ineffective for failing to raise an appellate claim regarding a sleeping juror; and (C) the prosecutor committed a *Brady* violation by failing to disclose Detective Toland's arrest report. *Id.*, Exs. 11-12.

A hearing on Moore's post-conviction petition was held on February 6, 2013. *Id.*, Exs. 1 & 13. On March 5, 2013, Circuit Court Timothy J. Martin denied post-conviction relief. *Id.*, Ex. 13. Moore's application for leave to appeal the ruling was summarily denied by the Court of Special Appeals on January 15, 2014, with the intermediate appellate court's mandate issued on February 18, 2014. *Id.*, Exs. 14 & 15.

---

[1]     *See Brady v. Maryland*, 373 U.S. 83 (1963).

Affording his self-represented petition a liberal construction, Moore raises the following grounds for federal habeas corpus review: (A) trial court error in denying Moore's motion to suppress the evidence discovered during a strip search; (B) ineffective assistance of trial counsel;[2] and (C) prosecutorial misconduct for failing to include Detective Toland's arrest report in the State's discovery packet. ECF No. 1.

## Standard of Review

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  Moore's claims will be analyzed under the statutory framework of the federal habeas statute at 28 U.S.C. § 2254, which sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7(1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, __U.S. __, __, 131 S.Ct. 1388, 1398 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 134 S. Ct. 1697, 1702 (2014), quoting *Harrington v. Richter*, __U.S. __, __, 131 S. Ct. 770, 786-87 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable

---

[2]     Moore's Sixth Amendment allegations here initially cite to ineffective assistance of trial counsel grounds raised in his application for leave to appeal the denial of his State post-conviction petition. ECF No. 1 at pgs. 10-18. The Petition, however, meanders through his claims of trial counsel error. Consequently, the Court shall also examine the other Sixth Amendment claim raised in the post-conviction court, to wit: that trial counsel Needleman erred in failing to raise the issue of the sleeping jury foreman.

application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 785 (internal quotation marks omitted).

Further, under § 2254(d)(2) "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts." *Id.* "[A] a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 599 U.S 766, 773 (2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

### Analysis

The Court does not find that the grounds presented are unexhausted, time-barred, or procedurally defaulted.[3] Therefore, the Court shall address the merits of Moore's claims.

### I.      Trial Court Error

Moore claims that the trial court erred when it denied his motion to suppress. The law concerning Fourth Amendment claims in federal habeas corpus proceedings is well established. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U. S. 465, 494 (1976) (footnotes omitted). Although *Stone* did not define the phrase "full and fair opportunity to litigate," this circuit has concluded that:

> [A] district court, when faced with allegations presenting Fourth Amendment claims, should, under the rule in *Stone v. Powell, supra*, first inquire as to whether or not the petitioner was afforded an opportunity to raise his Fourth

---

[3]      Respondents contend that Moore's prosecutorial misconduct claim is defaulted because it was not directly raised in Moore's application for leave to appeal the denial of his post-conviction petition. Inasmuch as Moore's prosecutorial misconduct claim was raised within one of Moore's Sixth Amendment claims, the Court shall review the claim on the merits.

Amendment claims under the then existing state practice.    This may be determined, at least in this Circuit, from the relevant state statutes, the applicable state court decisions, and from judicial notice of state practice by the district court.    Second,...when the district court has made the 'opportunity' inquiry, it need not inquire further into the merits of the petitioner's case, when applying *Stone v. Powell, supra*, unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired.

*Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978).

The record reveals that Moore was provided a full and fair opportunity to litigate his Fourth Amendment claim.  Indeed, his motion to suppress was the subject of an evidentiary hearing on April 16, 2007, when Moore's defense counsel conducted a direct examination of Detective Christopher Toland as to the confidential informant and the execution of the search and seizure warrant to conduct a body cavity search and raised arguments before Judge Cavanaugh.  ECF No. 6, Ex. 2, Tr. at pgs. 10-30, 32-39.  The following date, April 17, 2007, defense counsel Stanley Needleman argued that the warrant was deficient.  *Id.*, Ex. 3, Tr. at pgs. 3-6.  Judge Cavanaugh denied the motion to suppress and also found that the warrant was valid based upon the sufficiency of the probable cause statement.  *Id.*, Ex. 2, Tr. at pg. 40; Ex. 3, Tr. at pg. 6.  Further, Moore raised a challenge to the denial of the motion to suppress in his direct appeal to the Court of Special Appeals.  *Id.*, Ex. 5.  The Court of Special Appeals, after thoroughly examining the facts surrounding the seizure of the evidence as well as the legal reasoning of Circuit Court in denying the motion to suppress, upheld the trial court's denial of Moore's motion to suppress and the lawfulness of the search.  *Id.*, Ex. 8 at pgs. 7-32.

After review of the suppression hearing transcript and appellate court opinion, the Court finds that Moore clearly had a full and fair opportunity to litigate the legality of the search in the Maryland courts.    Thus, under *Stone*, Moore's Fourth Amendment claim is barred from consideration here.

## II.    Trial Counsel Error

Moore's Sixth Amendment claims of trial attorney error also fail.  When a petitioner alleges a claim of ineffective assistance of counsel, he must show both "that counsel's performance fell below an objective standard of reasonableness and that [his defense] was prejudiced as a result of counsel's conduct." *See Strickland v. Washington*, 466 U.S. 668, 688 (1984).  The second prong requires the court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* at 696.  Although "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," it is equally true that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.   Where circumstances are such that counsel should conduct further investigation to determine "whether the best strategy instead would be to jettison [a chosen] argument so as to focus on other, more promising issues,"  failure to conduct further investigation can amount to constitutionally deficient assistance. *See Rompilla v. Beard*, 545 U.S. 374, 395 (2005) (O'Connor, J., concurring). Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment and the burden to show that counsel's performance was deficient rests squarely on the defendant. *See Burt v. Titlow*, __ U.S. __, 134 S.Ct. 10, 17 (2013). Further, "[i]n cases where a conviction has been as a result of trial, the defendant must demonstrate that but for counsel's errors, there is a reasonable

probability that he would not have been convicted." *United States v. Luck*, 611 F.3d 183, 186 (4th Cir. 2010).

A showing of prejudice requires that (1) counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable, and (2) there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 687, 694. "The benchmark [of an ineffective assistance claim] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687; *Harrington*, 131 S.Ct. at 787–88 (citing *Strickland*, 466 U.S. at 687). A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *Strickland*, 466 U.S. at 697. The undersigned noted that "when a petitioner's habeas corpus claim is based on alleged ineffective assistance of counsel...the Antiterrorism and Effective Death Penalty Act ("AEDPA") standard[4] and the Strickland standards are dual and overlapping, and we apply the two standards simultaneously rather than sequentially." *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012) (citing *Harrington v. Richter*, 131 S. Ct. 770 (2011)).

---

[4]    Under AEDPA, federal courts may not grant a petitioner's habeas petition where the state court adjudicated the petitioner's habeas corpus claims on the merits unless the "state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d); *see also Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).

Affording the self-represented Petition a generous construction, Moore contends that trial counsel Stanley Needleman provided ineffective assistance on those grounds raised in his Maryland post-conviction petition.   The state post-conviction court rejected Moore's claims under *Strickland*, stating:

### Allegation One

Petitioner alleges that trial counsel was ineffective for failing to properly conduct the pretrial investigation of the facts and evidence in this case. Petitioner seems to argue that the evidence obtained from the strip search would have been suppressed as a search incident to an illegal arrest had trial counsel investigated the facts and evidence more closely.

Petitioner seems to believe that a search conducted after an illegal arrest is per se unreasonable and any evidence obtained afterwards must always be suppressed. This is not the law. The State may employ any one of numerous theories to justify a search. Just because one theory, in this case, search incident to arrest, did not justify the search does not mean that the search cannot be justified under some other theory, such as the search warrant.

In this case, the Court of Special Appeals found that the visual body cavity search was within the scope of the warrant. Where a search is within the proper scope of a warrant, the fact that a suspect is arrested illegally prior to the search being conducted does not vitiate the authority granted by the search warrant. Regardless, the Court of Special Appeals held that Petitioner was not in fact arrested when he was taken to the station to complete the execution of the warrant. *Moore v. State*, 195 Md. App. 695, 711- 12 (2007). . Furthermore, the State did not attempt to justify the search at the motions hearing as a search incident to arrest. *Id.* at 706-07.

Trial counsel was not deficient for failing to attack a theory to justify a search that was not relied upon by the State. Trial counsel vigorously attacked the search warrant which was relied on by the State to justify the search. In doing so, counsel demonstrated that he was well versed in the facts and evidence of the case by integrating the information into his argument. That trial counsel's argument did not ultimately persuade the court does not render his performance deficient. Even had trial counsel successfully argued that Petitioner was in fact arrested illegally, the evidence would have been admitted under the authority of the search warrant, therefore Petitioner can show no prejudice. Allegation number one is DENIED.

**Allegation Two**

Petitioner alleges that trial counsel was ineffective for failing to properly cross-examine Detective Toland about the arrest and detention of Petitioner prior to Petitioner's transport to the Towson precinct and subsequent strip and cavity search. Petitioner seems to argue that a more effective cross-examination would have resulted in the suppression of the evidence obtained from the strip search as a search incident to an illegal arrest. Additionally, Petitioner states that a more effective cross-examination would have impeached Detective Toland's credibility, thereby putting into question his testimony regarding the facts surrounding the search and arrest.

Throughout the Petition for Post-Conviction Relief, Petitioner argues that had counsel acted differently, the evidence obtained from the strip search would be suppressed as a search incident to an illegal arrest. As explained in this Court's response to Petitioner's first allegation, even a successful argument that the Petitioner was arrested illegally would not have resulted in suppression of the evidence because the State was able to justify the search under the warrant. Petitioner has failed to explain what trial counsel could have asked Detective Toland that would have changed this result. Trial counsel's examination of Detective Toland was not deficient. Trial counsel cross-examined Detective Toland about the scope of the warrant, which was the relevant theory being relied on by the State to justify the search. (Tr. Apr. 16, 2007 at 27-30)

Additionally, Petitioner has failed to explain what trial counsel should have done differently to impeach Detective Toland's credibility. Trial counsel brought out the fact that Detective Toland was not at the initial stop of Petitioner or his subsequent extraction from the vehicle. There is no indication that there was any impeachment evidence available to the defense that was not inquired into. Allegation number two is DENIED.

**Allegation Three**

Petitioner alleges that trial counsel was ineffective for failing to object to the hearsay testimony of Detective Toland regarding the actions of Petitioner during the Swat Team stop of Petitioner, or to effectively cross-examine him on this point. A review of the trial transcript reveals that this allegation is factually unsupported. Trial counsel did object to Detective Toland's testimony regarding the Swat Team stop and the court overruled his objection. (Tr. Apr. 17, 2007 at 16-17) Furthermore, trial counsel extensively cross-examined Detective Toland regarding his absence from the initial stop of Petitioner and his extraction from the vehicle. (Tr. Apr. 17, 2007 at 29-30) Petitioner has failed to identify a deficient action or omission by counsel and can therefore show no prejudice. Allegation number three is DENIED.

**Allegation Four**

Petitioner alleges that trial counsel was ineffective for failing to present an effective argument for revealing the identity of the confidential informant. Petitioner specifically alleges that trial counsel failed to argue the proper legal authority and factual foundation to disclose the informant. Additionally, Petitioner alleges that trial counsel should have requested a hearing under *Franks v. Delaware*, 438 U.S. 154, to disclose the informant's identity.

This Court finds that trial counsel did argue the proper legal authority to suppress the confidential informant and presented the best factual foundation he could, given the facts of the case. Even if trial counsel had made a deficient argument for the identity of the informant, Petitioner has shown no prejudice as Petitioner has not demonstrated that he was entitled to the identity of the informant given the facts of the case and the state of the law.

*Roviaro v. United States*, 353 U.S. 53 (1981), controls disclosure of the identity of a confidential informant. Under *Roviaro*, "where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61. When deciding whether to disclose, the court must "balance the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* Whether the balance weighs in favor of disclosure "must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62. Maryland courts "have described the balancing process as 'hinging on the materiality of the informer's testimony to the determination of the accused's guilt.'" *Edwards v. State*, 350 Md. 433, 442 (1998). In determining the balance, it is highly relevant whether the informant was a mere tipster, or if the informant was an actual participant in the criminal activity and may have direct knowledge of facts relevant to the defendant's guilt or innocence. *Id.* The latter situation is more likely to favor disclosure. *Id.*

Trial counsel certainly argued the proper legal authority to disclose the identity of the informant. At the hearing on the motion to produce the identity of the informant, trial counsel argued that under *Roviaro*, the identity of the confidential informant must be revealed because it is essential to the defense of entrapment. Petitioner does not allege that reference to *Roviaro* was in error, but alleges that trial counsel "should have requested a *Franks* hearing for an in camera hearing to disclose and question the confidential informant." (Petition for Post-Conviction Relief at 16). Petitioner has shown absolutely no basis for trial counsel to request a *Franks* hearing. A *Franks* hearing is ordered when a defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the

finding of probable cause. . ." *Franks*, 438 U.S. at 156. Petitioner has not alleged that there was a falsehood in the confidential informant's affidavit, and consequently has failed to show how trial counsel was deficient for not requesting a *Franks* hearing, or how he was prejudiced thereby.

Additionally, trial counsel presented the best foundation for the necessity of the informant's identity that he could with the facts available to him. To establish a foundation for the defense of entrapment,[] trial counsel alleged that the confidential informant acted as a state agent in inducing Petitioner to take drugs to Baltimore County. Trial counsel did not specifically argue why Petitioner was not predisposed to commit the crime, however, it appears that the facts of the case did not lend support to that position, given that Petitioner had sold drugs to police in a controlled buy and had prior drug-related convictions. Trial counsel did argue, however, under *Hardiman v. State*, 50 Md. App. 98 (1981), that it is not the trial court's role, when determining whether to disclose the informant's identity, to decide the credibility of a proffered defense. Petitioner has not explained what facts trial counsel failed to present which would have supported his motion to disclose the informant, therefore Petitioner has failed to meet his burden of showing deficient performance and prejudice.

Petitioner also seems to argue that trial counsel should have elicited from the State that there was an agreement between the confidential informant and the police that created an incentive for the informant to give information to the police about Petitioner. While evidence of bias or a deal is powerful impeachment evidence against a witness, the informant in this case did not testify. The underlying validity of the search warrant was already ruled upon at the suppression hearing and found to be sufficient. Trial counsel wanted to avoid any mention of the search warrant at trial because the warrant itself was not at issue and mention of it tended to emphasize that there was enough probable cause to sustain a search warrant. This could confuse the jury into improperly considering the existence of the search warrant as evidence of Petitioner's guilt in this case. Trial counsel's avoidance of this possibility was sound trial strategy. Allegation number four is DENIED.

**Allegations Five and Six**

Petitioner alleges that trial counsel was ineffective for failing to object/move for a mistrial on the grounds that the prosecution's failure to provide a copy of the arrest report was in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Additionally, in a related allegation, Petitioner alleges that the prosecutor engaged in misconduct entitling him to relief by failing to provide Detective Toland's arrest report to the defense in violation of *Brady*. As explained below, this Court finds that the information in the arrest report does not fall under *Brady*, therefore trial counsel was not ineffective for failing to move for a mistrial under *Brady* and the prosecution did not engage in misconduct by failing to provide the arrest report.

14

Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. At trial, Detective Toland indicated that every time a person is detained at the station an arrest sheet is filled out. (Tr. Apr. 17, 2007 at 85-86) At this point, trial counsel discovered that the defense had only been provided with the police report prior to trial and proceeded to inspect the arrest report. Trial counsel's review of the arrest report revealed that it contained merely biographical information, such as the person's name, address, telephone number and place of employment. (Tr. Apr. 17, 2007 at 87) The report stated that a search of Petitioner was conducted, but contained no description of the event or statement regarding probable cause. These things were included in the police report and warrant application provided to the defense prior to trial.

This Court finds this allegation without merit because Petitioner has not identified any exculpatory information or evidence material to guilt or punishment that would entitle him to discovery of the arrest report under *Brady*. Trial counsel's actions with regard to the arrest report were entirely reasonable. When trial counsel discovered that the defense had not been privy to the arrest report he investigated its contents and determined that it contained merely biographical information. As such, trial counsel did not object to the document or move for a mistrial. This was reasonable trial strategy and in no way deficient. Petitioner can show no prejudice because a motion for mistrial under *Brady* would have been unsuccessful as the arrest report did not contain the type of information the suppression of which violates a defendant's due process right to a fair trial. Allegations number five and six are DENIED.

**Allegation Seven**

Petitioner alleges that trial counsel was ineffective for failing to call as a rebuttal witness the second police officer (other than Detective Toland) that was present during the strip search, as well as the police officers that executed the initial stop of Petitioner. Petitioner argues that "the testimony of this witness may have very well refuted the prior testimony of Detective Toland." Petition for Post-Conviction Relief at 20. Petitioner's argument is pure speculation. Petitioner points to no facts in reality that would have or should have led trial counsel to believe that the other police officers would testify inconsistently with Detective Toland and exonerate him. In fact, with no evidence to the contrary, there was a significant likelihood that the testimony of the other officers would be entirely consistent with Detective Toland's, thereby bolstering the Detective's credibility and damaging the defense's case. Trial counsel's decision not to call these witnesses falls well within the realm of sound trial strategy and was in fact a wise decision on his part. Allegation number seven is DENIED.

**Allegation Eight**

Petitioner alleges that trial counsel was ineffective for failing to move for the replacement of the jury foreman who was alleged to be sleeping during jury instructions, or for failing to move for a mistrial due to the sleeping juror.[] At the close of jury instructions, trial counsel brought to the court's attention that "Mr. Foreman was, like sleeping. If he's sleeping during closing arguments, I'm going to make an issue out of this in my opinion." (Tr. Apr. 17, 2007 at 114). Counsel then proceeded to make closing arguments. No motion was made for mistrial or for replacement if the sleeping juror.

At the post-conviction hearing Mr. Needleman testified that the issue of the sleeping juror presented him with a Hobson's choice. The Petitioner in this case is an African-American male who was on trial for drug charges. The sleeping jury foreman was also an African-American male. The juror who would have replaced the foreman, however, was white. Mr. Needleman further testified that the jury foreman appeared to be paying attention during the rest of the trial and at closing. Under these circumstances, it was entirely reasonable trial strategy to decline to replace the jury foreman.

Similarly, it was reasonable trial strategy to decline to move for a mistrial due to the sleeping juror. Petitioner does not allege that the juror was sleeping prior to or after the jury instructions, which came at the end of a two-day trial. Trial counsel's testimony, which was uncontroverted, was that the juror was paying attention at all other relevant phases of the trial. Under these circumstances, trial counsel's decision was reasonable and well within the wide range of competent professional judgment.

Allegation number eight is DENIED.

ECF No. 6, Ex. 13 at pgs. 5-14.

Plainly, the post-conviction court found trial counsel Needleman's determinations to involve reasonable tactical decisions. His "strategic choices must be respected...if they are based on professional judgment," *Strickland*, 466 U.S. at 681; *Lee v. Clarke*, 781 F.3d 114, 124-25 (4th Cir. 2015). Post-Conviction Judge Martin's findings, supported by the record, are presumed correct. Applying these facts to *Strickland*, Moore is not entitled to relief. The state court's determinations shall be not disturbed.

**III. Prosecutorial Misconduct**

Moore seemingly alleges that Assistant State's Attorney John Reilly violated *Brady* by failing to disclose an arrest report. Assuming without deciding that this ground is not procedurally defaulted, Moore has failed to demonstrate that the prosecution suppressed or withheld evidence and the suppressed evidence had a material effect on the case.

In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The Court subsequently held that the prosecution's duty to disclose favorable evidence is not dependent upon a request from the accused. *See United States v. Agurs*, 427 U.S. 97, 107 (1976). Evidence is favorable to the accused under *Brady* "if it would tend to exculpate him or reduce the penalty...." *Id.* at 87-88. The duty of disclosure is not limited to evidence the prosecutor is aware of. Rather, it includes "evidence known only to police investigators and not to the prosecutor." *Kyles v. Whitley*, 514 U.S. 419, 438 (1995). Thus, under *Brady*, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Id.* at 437. In order for a failure to disclose exculpatory or favorable evidence to rise to a constitutional level, there must be a reasonable probability that the results of the proceeding would have been different had the evidence been disclosed. *See United States v. Bagley*, 473 U.S. 667, 682 (1985).

The prosecutorial misconduct claim was raised in Moore's post-conviction petition and rejected by Judge Martin, who reviewed the trial court record and noted that the arrest report did not contain exculpatory information, but merely contained "biographical information, such as

the person's name, address, telephone number and place of employment." Moore's *Brady* claim fails.   He misconstrues the intent of *Brady*, which is designed to prevent the prosecution from benefitting from the concealment and suppression of exculpatory evidence known only to the prosecutor and police investigators.   Here, the arrest report contained no exculpatory information.   Further, the arrest report contained no descriptions of the event or statement regarding probable cause.   This information was found in the police report and warrant application provided to defense counsel prior to trial.   Judge Martin's ruling shall not be disturbed.

## Conclusion

In light of the rulings of the Court, the instant Petition for habeas corpus relief will be denied, and this case will be dismissed by separate Order.   When a district court dismisses a habeas petition, a Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   When the district court denies relief on the merits, a prisoner satisfies this standard by demonstrating that reasonable jurists would find that the district court's assessment of the constitutional claims is debatable or wrong.   *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *see Miller–El v. Cockrell,* 537 U.S. 322, 336–38, (2003). Rustin does not satisfy this standard, and the Court declines to issue a Certificate of Appealability.   A separate Order follows.


Date: May 7, 2015                                    _____
                                                          RICHARD D. BENNETT
                                                     UNITED STATES DISTRICT JUDGE